EMN:NMA/JMK/AH
F.#2008R00052

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 1 2 2012 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

CONRAD IANNIELLO,
JAMES BERNARDONE,
    also known as "Jamie,"
RYAN ELLIS,
ROBERT FIORELLO,
    also known as "Bobby,"
PAUL GASPARRINI,
    also known as "Paulie,"
RODNEY JOHNSON,
FELICE MASULLO,
WILLIAM PANZERA,
    also known as "Billy,"
ROBERT SCALZA,
JOHN SQUITIERI and
SALVESTER ZARZANA,
    also known as "Sal,"

        Defendants.

- - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **12 - 264 - NGG**
(T. 18, U.S.C., §§ 664,
894(a)(1), 981(a)(1)(C),
1512(c)(2), 1512(k),
1951(a), 1955(a), 1955(d),
1962(d), 1963, 1963(a),
1963(m), 2 and 3551 et
seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

INTRODUCTION TO ALL COUNTS

      At all times relevant to this Indictment, unless
otherwise indicated:

The Enterprise

      1. The members and associates of the Genovese
organized crime family of La Cosa Nostra constituted an
"enterprise," as defined in Title 18, United States Code, Section
1961(4), that is, a group of individuals associated in fact

(hereinafter the "Genovese crime family" and the "enterprise").
The enterprise constituted an ongoing organization whose members
functioned as a continuing unit for a common purpose of achieving
the objectives of the enterprise.  The Genovese crime family
engaged in, and its activities affected, interstate and foreign
commerce.  The Genovese crime family was an organized criminal
group that operated in the Eastern District of New York and
elsewhere.

2.  La Cosa Nostra operated through organized crime
families.  Five of these crime families - the Bonanno, Colombo,
Gambino, Genovese and Luchese crime families – were headquartered
in New York City, and supervised criminal activity in New York,
in other areas of the United States and, in some instances, in
other countries.  Another crime family, the Decalvacante crime
family, operated principally in New Jersey, but from time to time
also in New York City.

3.  The ruling body of La Cosa Nostra, known as the
"Commission," consisted of leaders from each of the crime
families.  The Commission convened from time to time to decide
certain issues affecting all of the crime families, such as rules
governing crime family membership.

4.  The Genovese crime family had a hierarchy and
structure.  The head of the Genovese crime family was known as
the "boss."  The Genovese crime family boss was assisted by an

2

"underboss" and a counselor known as a "consigliere."  Together,
the boss, underboss and consigliere were the crime family's
"administration."  With the assistance of the underboss and
consigliere, the boss was responsible for, among other things,
setting policy and resolving disputes within and between La Cosa
Nostra crime families and other criminal groups.  The
administration further supervised, supported, protected and
disciplined the lower-ranking participants in the crime family.
In return for their supervision and protection, the
administration received part of the illegal earnings generated by
the crime family.  Members of the Genovese crime family served in
an "acting" rather than "official" capacity in the administration
on occasion due to another administration member's incarceration
or ill health, or for the purpose of seeking to insulate another
administration member from law enforcement scrutiny.  Further, on
occasion, the Genovese crime family was overseen by a "panel" of
crime family members that did not include the boss, underboss
and/or consigliere.

         5.   Below the administration of the Genovese crime
family were numerous "crews," also known as "regimes" and
"decinas."  Each crew was headed by a "captain," also known as a
"skipper," "caporegime" and "capodecina."  Each captain's crew
consisted of "soldiers" and "associates."  The captain was
responsible for supervising the criminal activities of his crew

3

and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Genovese crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

7. Many requirements existed before an associate could become a member of the Genovese crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the

4

crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8. The principal purpose of the Genovese crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Genovese crime family through various criminal activities, including extortion, fraud, bribery, illegal gambling and loansharking. The members and associates of the Genovese crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Genovese crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

5

10. The members and associates of the Genovese crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Genovese crime family often coordinated criminal activity with members and associates of other organized crime families.

<u>The Defendants</u>

12. The defendants JAMES BERNARDONE, also known as "Jamie," RYAN ELLIS, PAUL GASPARRINI, also known as "Paulie," CONRAD IANNIELLO, WILLIAM PANZERA, also known as "Billy," and ROBERT SCALZA participated in the operation and management of the enterprise.

13. At various times, the defendant CONRAD IANNIELLO was a captain, acting captain, soldier and associate within the Genovese crime family.

14. At various times, the defendant JAMES BERNARDONE, also known as "Jamie," was a soldier and associate within the Genovese crime family.

15.   At various times, the defendants RYAN ELLIS, PAUL GASPARRINI, also known as "Paulie," WILLIAM PANZERA, also known as "Billy," and ROBERT SCALZA were associates within the Genovese crime family.

COUNT ONE
(Racketeering Conspiracy)

16.   The allegations contained in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

17.   In or about and between August 2006 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," RYAN ELLIS, PAUL GASPARRINI, also known as "Paulie," CONRAD IANNIELLO and ROBERT SCALZA, together with others, being persons employed by and associated with the Genovese crime family, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  Each defendant agreed that a

conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Extortion Conspiracy/Extortion - 21st Street Site)

18. The defendants JAMES BERNARDONE and PAUL GASPARRINI agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.   Extortion Conspiracy

19. In or about and between August 2006 and September 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to the work of John Doe #1, an individual whose identity is known to the Grand Jury, at a construction site located on 21st Street in New York, New York, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.   Extortion

20. In or about and between August 2006 and September 2007, both dates being approximate and inclusive, within the

8

Eastern District of New York and elsewhere, the defendants JAMES
BERNARDONE and PAUL GASPARRINI, together with others, did
knowingly and intentionally obstruct, delay and affect commerce,
and the movement of articles and commodities in commerce, by
extortion, in that the defendants and others obtained property,
to wit: money relating to John Doe #1's work at a construction
site located on 21st Street in New York, New York, from John Doe
#1, with his consent, which consent was induced through wrongful
use of actual and threatened force, violence and fear, in
violation of Title 18, United States Code, Sections 1951(a) and
2.

      C.   New York Penal Law Extortion

        21.   In or about and between August 2006 and September
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JAMES
BERNARDONE and PAUL GASPARRINI, together with others, did
knowingly and intentionally steal property by extortion, in that
the defendants and others obtained property, to wit: money
relating to John Doe #1's work at a construction site located on
21st Street in New York, New York, by compelling and inducing
John Doe #1 to deliver such property by instilling in him a fear
that, if the property was not so delivered, one or more persons
would (1) cause physical injury to one or more persons in the
future, (2) cause damage to property and (3) perform an act which

9

would not in itself materially benefit the defendants, but which was calculated to harm John Doe #1 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT TWO
(Extortion Conspiracy/Extortion - Flatbush Avenue Site)

22.   The defendants JAMES BERNARDONE and PAUL GASPARRINI agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Two:

A.   Extortion Conspiracy

23.   In or about and between June 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York, from John Doe #1, with his consent, which consent was to be

10

induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

     B.   <u>Extortion</u>

        24.  In or about and between June 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

     C.   <u>New York Penal Law Extortion</u>

        25.  In or about and between June 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: money

11

relating to John Doe #1's work at a construction site located at
the intersection of Gold Street, Johnson Street and Flatbush
Avenue in Brooklyn, New York, by compelling and inducing John
Doe #1 to deliver such property by instilling in him a fear that,
if the property was not so delivered, one or more persons would
(1) cause physical injury to one or more persons in the future,
(2) cause damage to property and (3) perform an act which would
not in itself materially benefit the defendants, but which was
calculated to harm John Doe #1 materially with respect to his
health, safety, business, calling, career, financial condition,
reputation and personal relationships, in violation of New York
Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii),
155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT THREE
(Extortion Conspiracy/Extortion - Ditmars Boulevard Site)

26.   The defendant PAUL GASPARRINI agreed to the
commission of the following acts, any one of which alone
constitutes Racketeering Act Three:

A.   Extortion Conspiracy

27.   In or about and between April 2007 and April 2008,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant PAUL
GASPARRINI, together with others, did knowingly and intentionally
conspire to obstruct, delay and affect commerce, and the movement
of articles and commodities in commerce, by extortion, in that

12

the defendant and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located on Ditmars Boulevard in Queens, New York, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.   Extortion

28.   In or about and between April 2007 and April 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PAUL GASPARRINI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on Ditmars Boulevard in Queens, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.   New York Penal Law Extortion

29.   In or about and between April 2007 and April 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PAUL GASPARRINI, together with others, did knowingly and intentionally

13

steal property by extortion, in that the defendant and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on Ditmars Boulevard in Queens, New York, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property was not so delivered, the one or more persons would (1) cause physical injury to one or more persons in the future, (2) cause damage to property and (3) perform an act which would not in itself materially benefit the defendant, but which was calculated to harm John Doe #1 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

## RACKETEERING ACT FOUR
(Illegal Gambling)

30. In or about and between April 2008 and July 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RYAN ELLIS and CONRAD IANNIELLO, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more

14

persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT FIVE
(Extortion Conspiracy/Extortion - Labor Union)

31.    The defendants RYAN ELLIS, CONRAD IANNIELLO and ROBERT SCALZA agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act Five:

A.    Extortion Conspiracy

32.    In or about and between April 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RYAN ELLIS, CONRAD IANNIELLO and ROBERT SCALZA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: a labor union's right to conduct business, including organizing activities and the solicitation of new members, from a labor union, with the consent of such labor union, its officers, agents and representatives, including John Doe #2, an individual whose identity is known to the Grand Jury,

15

which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B. Extortion

33. In or about and between April 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RYAN ELLIS, CONRAD IANNIELLO and ROBERT SCALZA, together with others, did knowingly and intentionally obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property and attempted to obtain property, to wit: a labor union's right to conduct business, including organizing activities and the solicitation of new members, from a labor union, with consent of such labor union, its officers, agents and representatives, including John Doe #2, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C. New York Penal Law Extortion

34. In or about and between April 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RYAN ELLIS, CONRAD IANNIELLO and ROBERT SCALZA, together with others, did

16

knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: a labor union's right to conduct business, including organizing activities and the solicitation of new members, by compelling and inducing such labor union, its officers, agents and representatives, including John Doe #2, to deliver such property by instilling in them a fear that, if the property was not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future, (2) cause damage to property and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm another person materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT SIX
(Extortion Conspiracy/Attempted Extortion - John Doe #3)

35. The defendants CONRAD IANNIELLO and ROBERT SCALZA agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Six:

A.   New York Penal Law Extortion Conspiracy

36. In or about and between April 2008 and August 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CONRAD

17

IANNIELLO and ROBERT SCALZA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendants and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #3, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property was not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

### B.   New York Penal Law Attempted Extortion

37.   In or about and between April 2008 and August 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CONRAD IANNIELLO and ROBERT SCALZA, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendants and others attempted to obtain property, to wit: money, by compelling and inducing John Doe #3 to deliver such property by instilling in him a fear that, if the property was not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

18

RACKETEERING ACT SEVEN
(Extortion Conspiracy/Extortion - San Gennaro Feast Vendors)

38.   The defendant CONRAD IANNIELLO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Seven:

A.   New York Penal Law Extortion Conspiracy

39.   In or about and between April 2008 and September 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CONRAD IANNIELLO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money earned by vendors at the San Gennaro Feast, by compelling and inducing such vendors to deliver such property by instilling in them a fear that, if the property was not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B.   New York Penal Law Extortion

40.   In or about and between April 2008 and September 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, CONRAD IANNIELLO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained

19

property, to wit: money earned by vendors at the San Gennaro
Feast, by compelling and inducing such vendors to deliver such
property by instilling in them a fear that, if the property were
not so delivered, one or more persons would (1) cause physical
injury to one or more persons in the future, (2) cause damage to
property and (3) perform an act which would not in itself
materially benefit the defendant, but which was calculated to
harm the vendors materially with respect to their health, safety,
business, calling, career, financial condition, reputation and
personal relationships, in violation of New York Penal Law
Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii),
155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT EIGHT<br>
(Extortion Conspiracy/Extortion - 60th Lane Site)

41. The defendants JAMES BERNARDONE and PAUL
GASPARRINI agreed to the commission of the following acts, any
one of which alone constitutes Racketeering Act Eight:

A.   Extortion Conspiracy

42. In or about and between June 2008 and February
2009, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants JAMES
BERNARDONE and PAUL GASPARRINI, together with others, did
knowingly and intentionally conspire to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others agreed

20

to obtain property, to wit: money relating to John Doe #1's work at a construction site located on 60th Lane in Queens, New York, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.  Extortion

43.  In or about and between June 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on 60th Lane in Queens, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.  New York Penal Law Extortion

44.  In or about and between June 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE and PAUL GASPARRINI, together with others, did

21

knowingly and intentionally steal property by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on 60th Lane in Queens, New York, by compelling and inducing John Doe #1 to deliver such property by instilling in him a fear that, if the property was not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future, (2) cause damage to property and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #1 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWO
### (Extortion Conspiracy - 21st Street Site)

45. In or about and between August 2006 and September 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," and PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by

22

extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located on 21st Street in New York, New York, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT THREE
(Extortion - 21st Street Site)

46. In or about and between August 2006 and September 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," and PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on 21st Street in New York, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT FOUR
(Extortion Conspiracy - Flatbush Avenue Site)

47.   In or about and between June 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," PAUL GASPARRINI, also known as "Paulie," and SALVESTER ZARZANA, also known as "Sal," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York, from John Doe #1, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT FIVE
(Extortion - Flatbush Avenue Site)

48.   In or about and between June 2007 and December 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," PAUL GASPARRINI, also known as "Paulie," and SALVESTER ZARZANA, also known as "Sal," together

24

with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

COUNT SIX

(Extortion Conspiracy - Ditmars Boulevard Site)

49.  In or about and between April 2007 and April 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located on Ditmars Boulevard in Queens, New York, from John Doe #1, with his consent, which consent was

25

to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

### COUNT SEVEN
(Extortion - Ditmars Boulevard Site)

50.   In or about and between April 2007 and April 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on Ditmars Boulevard in Queens, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

### COUNT EIGHT
(Union Embezzlement)

51.   In or about and between January 2008 and June 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN SQUITIERI, together with others, did knowingly and willfully

embezzle, steal and unlawfully abstract and convert to his own use and to the use of others, credits, property and other assets of one or more employee pension benefit plans subject to Title I of the Employee Retirement Income Security Act of 1974, to wit: the right to collect monies and funds owed to pension and annuity funds operated on behalf of union laborers of Bricklayers and Allied Craftworkers Local Union 7, Tile, Marble and Terrazzo.

(Title 18, United States Code, Sections 664, 2 and 3551 et seq.)

## COUNT NINE
(Extortionate Collection of Credit Conspiracy - John Doe #4)

52.  In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the District of New Jersey, the defendants ROBERT FIORELLO, also known as "Bobby," and WILLIAM PANZERA, also known as "Billy," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #4, an individual whose identity is known to the Grand Jury.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

## COUNT TEN
(Extortionate Collection of Credit - John Doe #4)

53.  In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the

27

District of New Jersey, the defendants ROBERT FIORELLO, also known as "Bobby," and WILLIAM PANZERA, also known as "Billy," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #4.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

COUNT ELEVEN
(Collection of Unlawful Debt Conspiracy)

54. The allegations contained in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

55. In or about and between February 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant WILLIAM PANZERA, also known as "Billy," being a person employed by and associated with the Genovese crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through the collection from John Doe #4 of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), to wit: debts that were unenforceable under New York State law, to wit: New York

28

Penal Law Section 190.40, in whole and in part as to principal and interest because of the law relating to usury and were incurred in connection with the business of lending money and a thing of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

## COUNT TWELVE
### (Extortion Conspiracy - Labor Union)

56. In or about and between April 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RYAN ELLIS, CONRAD IANNIELLO and ROBERT SCALZA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: a labor union's right to conduct business, including organizing activities and the solicitation of new members, from a labor union, with the consent of such labor union, its officers, agents and representatives, including John Doe #2, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

29

## COUNT THIRTEEN
(Extortion - Labor Union)

57.  In or about and between April 2008 and May 2008,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants RYAN ELLIS,
CONRAD IANNIELLO and ROBERT SCALZA, together with others, did
knowingly and intentionally obstruct, delay and affect, and
attempt to obstruct, delay and affect, commerce, and the movement
of articles and commodities in commerce, by extortion, in that
the defendants and others obtained property and attempted to
obtain property, to wit: a labor union's right to conduct
business, including organizing activities and the solicitation of
new members, from a labor union, with the consent of such labor
union, its officers, agents and representatives, including John
Doe #2, which consent was to be induced through wrongful use of
actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and
3551 et seq.)

## COUNT FOURTEEN
(Illegal Gambling)

58.  In or about and between April 2008 and July 2008,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendants RYAN ELLIS,
CONRAD IANNIELLO and FELICE MASULLO, together with others, did
knowingly and intentionally conduct, finance, manage, supervise,

30

direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FIFTEEN
### (Obstruction of Justice Conspiracy)

59.   In or about and between April 2008 and May 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RODNEY JOHNSON, together with others, did knowingly and intentionally conspire to corruptly obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York, contrary to Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

31

## COUNT SIXTEEN
(Obstruction of Justice)

60.  In or about and between April 2008 and May 2008, within the Eastern District of New York and elsewhere, the defendant RODNEY JOHNSON, together with others, did knowingly, intentionally and corruptly attempt to obstruct, influence and impede an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Extortion Conspiracy - 60th Lane Site)

61.  In or about and between June 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," and PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money relating to John Doe #1's work at a construction site located on 60th Lane in Queens, New York, from John Doe #1, with his consent, which consent was to be induced

through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT EIGHTEEN
(Extortion - 60th Lane Site)

62. In or about and between June 2008 and February 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES BERNARDONE, also known as "Jamie," and PAUL GASPARRINI, also known as "Paulie," together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: money relating to John Doe #1's work at a construction site located on 60th Lane in Queens, New York, from John Doe #1, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

33

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND ELEVEN

63. The United States hereby gives notice to the defendants charged in Counts One and Eleven that, upon conviction of either offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires any person convicted of such offenses to forfeit:

(a) any interest such defendants have acquired and maintained an interest in, in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1);

(b) any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over any enterprise which such defendants have established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(c) any property constituting or derived from any proceeds such defendants obtained, directly and indirectly, from the racketeering activity or unlawful debt collection, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

34

64.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

CRIMINAL FORFEITURE ALLEGATION AS TO
COUNTS TWO THROUGH TEN, TWELVE,
THIRTEEN AND FIFTEEN THROUGH EIGHTEEN

65.   The United States hereby gives notice to the defendants charged in Counts Two through Ten, Twelve, Thirteen and Fifteen through Eighteen that, upon conviction of any such offenses, the government will seek forfeiture in accordance with

35

Title 18, United States Code, Section 981(a)(1)(C) and Title 28,
United States Code, Section 2461(c), which require any person
convicted of any such offenses to forfeit any property
constituting or derived from proceeds obtained directly or
indirectly as a result of such offenses.

      67.  If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

      (a)  cannot be located upon the exercise of due
diligence;

      (b)  has been transferred or sold to, or deposited
with, a third party;

      (c)  has been placed beyond the jurisdiction of
the court;

      (d)  has been substantially diminished in value;
or

      (e)  has been commingled with other property which
cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), as incorporated by Title 28,
United States Code, Section 2461(c), to seek forfeiture of any

36

other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT FOURTEEN

66.  The United States hereby gives notice to the defendants charged in Count Fourteen that, upon their conviction of such offense, the government will seek forfeiture in accordance with (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense; and (b) Title 18, United States Code, Section 1955(d), which provides for forfeiture of any property, including money, used in violation of the provisions of Title 18, United States Code, Section 1955.

67.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

38

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*Conrad Ianniello, James Bernardone, Ryan Ellis, Robert Fiorello, Paul Gasparrini, Rodney Johnson, Felice Masullo, William Panzera, Robert Scalza, John Squitieri and Salvester Zarzana*

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 664, 894(a)(1), 981(a)(1)(C), 1512(c)(2), 1512(k), 1951(a), 1955(a), 1955(d), 1962(d), 1963, 1963(s), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., §2461(c))

*A true bill.*

_____
                                                    *Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____
_____
                                                    *Clerk*

*Bail, $* _____
_____

***Jacquelyn M. Kasulis and Amanda Hector, Assistant U.S. Attorneys, (718) 254-6103/6212***