```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------X
                                    :
 4    UNITED STATES OF AMERICA,     :
                                    :  12-CR-264 (NGG)
 5              v.                  :
                                    :  April 18, 2012
 6    JAMES BERNARDONE, et al,      :  Brooklyn, New York
                                    :
 7                   Defendant.     :
                                    :
 8    ------------------------------X

 9

        TRANSCRIPT OF CRIMINAL CAUSE FOR INITIAL APPEARANCE
10            BEFORE THE HONORABLE MARILYN D. GO
                 UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12
      For the Government:       UNITED STATES ATTORNEY
13                              BY:  JACQUELINE KASULIS, ESQ.
                                     AMANDA HECTOR, ESQ.
14                              ASSISTANT U.S. ATTORNEYS

15    For Defendant Bernardone: LAWRENCE DiGIANSANTE, ESQ.
                                984 Morris Park Avenue
16                              Bronx, NY 10462

17    For Defendant Squitieri:  RICHARD S. PAKOLA, JR., ESQ.
                                Gribetz & Lowenberg, PLLC
18                              155 North Main Street
                                New City, NY 10956
19
      For Defendant Ellis:      JAMES R. FROCCARO, ESQ.
20                              20 Vanderventer Avenue, Suite 103W
                                Port Washington, NY 11050
21
      For Defendant Zarzana:    Joseph Mure, Jr.
22                              26 Court Street, Suite 2601
                                Brooklyn, NY 11242
23
      Court Transcriber:        MARY GRECO
24                              TypeWrite Word Processing Service
                                211 N. Milton Road
25                              Saratoga Springs, NY 12866


      Proceedings recorded by electronic sound recording,
      transcript produced by transcription service
```

2

I N D E X

Louis and Lorraine Bernadone Sworn at Page 4

John Desimone Sworn at Page 13

Donna Squitieri Sworn at Page 17

Joan Penzer Sworn at Page 17

Rosemary Diblasey Sworn at Page 20

1          THE CLERK:  -- arraignment, case 12-CR-264, <u>The</u>
2    <u>United States v. James Bernardone, Ryan Ellis, John Squitieri,</u>
3    <u>and Salvester Zarzana</u>.  Counsel, please state your name for the
4    record.
5          MS. KASULIS:  Jacqueline Kasulis and Amanda Hecter
6    for the United States.  Good afternoon, Your Honor.
7          MR. FROCCARO:  Good afternoon, Your Honor.  James
8    Froccaro for Ryan Ellis.
9          MR. PAKOLA:  Good afternoon, Your Honor.  Richard
10   Pakola, Gribetz Lowenberg, for John Squitieri.
11         MR. DiGIANSANTE:  Lawrence DiGiansante for Mr.
12   Bernardone.  Good afternoon.
13         MR. MURE:  Joe Mure for Sal Zarzana.
14         THE COURT:  Good afternoon, counselors.  Have you
15   received a copy of the indictment and discussed with your
16   respective clients the charges set forth therein against your
17   clients?
18         ALL DEFENSE ATTORNEYS:  Yes, Your Honor.
19         THE COURT:  And do your clients waive formal reading
20   of the charges?
21         ALL DEFENSE ATTORNEYS:  Yes, Your Honor.
22         THE COURT:  And what is the plea to the seven counts
23   against Mr. Bernardone?
24         MR. DiGIANSANTE:  Not guilty, Your Honor.
25         THE COURT:  And four counts against Mr. Ellis?

4

1          MR. FROCCARO:  Not guilty, Your Honor.

2          THE COURT:  All right.  I guess there's one count

3  against Mr. Squitieri?

4          MR. PAKOLA:  That's correct, Your Honor, and not

5  guilty.

6          THE COURT:  And two counts against Mr. Zarzana.

7          MR. MURE.  Not guilty.

8          THE COURT:  And I just want to confirm with the

9  defendants.  You understand the nature of the charges against

10  you?

11          ALL DEFENDANTS:  Yes.

12          THE COURT:  Yes, okay.  So maybe we'll do the

13  exclusion of time first while we have them all together.

14  There's always room for improvement.

15          Now, I understand that there's been a status

16  conference set for May 1st before Judge Garaufis, and I have

17  here applications for an exclusion of time.  Yes?

18          MR. PAKOLA:  Yes, ma'am.

19          THE COURT:  Okay.  And as you probably know from

20  having observed proceedings with respect to the other

21  defendants who were arrested today on this indictment that I've

22  already excluded time and I see in your applications you're

23  also seeking exclusion for the same reason, so possibility of

24  plea negotiations and time to prepare for trial.  Okay.

25          I'd just like all the defendants to understand that

5

1  you do have a right to a speedy trial under both the

2  constitution and by statue.  Trials would ordinarily be

3  required to be held in 70 days but the Court will exclude time

4  if there is a reason to do so.  And I understand you join in

5  the application for excluding of time, is that correct?

6          ALL:  Yes.

7          THE COURT:  And I find for the reasons that I've

8  already discussed it would be in the interest of justice to

9  exclude the time period from today until May 1st within which

10 trial must commence.

11         Now, I'll hear the Government on proposed bail

12 packages.  I guess we'll just take them one at a time.

13         MS. KASULIS:  Your Honor, I can start.  With respect

14 to Mr. Bernardone, the Government does have an agreed upon bail

15 package proposal for Your Honor.  $750,000.00 bond secured by

16 one property owned by his parents, Lorraine and Louis

17 Bernardone.  The property has $500,000.00 in equity.  My

18 understanding is that his parents do own the property outright

19 and there are no liens on the property.  Neither of them --

20 both of them are retired.  Both Lorraine and Louis, his

21 parents, who have agreed to be suretors on the bond, they each

22 receive a monthly pension.  Mrs. Bernardone receives a

23 $2,600.00 a month approximately pension amount, and his father,

24 Louis, receives a $3,000.00 a month --

25         THE COURT:  Why don't we have them come up so we

6

1   don't have to repeat this?

2          MS. KASULIS:  Sure.

3                  [Pause in proceedings.]

4          THE CLERK:  The judge is going to ask some questions.

5   I'll put you under oath.  Please raise your hand.

6    (AT THIS TIME THE WITNESSES, LOUIS AND LORRAINE BERNARDONE,

7   WERE SWORN.)

8          THE CLERK:  Please state your name for the record and

9   speak loudly so we can record you.  Your name?

10         MR. BERNARDONE:  Louis Bernardone.

11         THE CLERK:  Ma'am?

12         MRS. BERNARDONE:  Lorraine Bernardone.

13         THE CLERK:  Thank you.

14         THE COURT:  Okay.

15         MS. KASULIS:  Your Honor, so it would be the property

16  and the $750,000.00 bond with the property.

17         THE COURT:  Okay.  I'd like you to, Mr. and Mrs.

18  Bernardone, to listen carefully to what Assistant United States

19  Attorney Razulo [sic] is relating to me about your financial

20  circumstances and I'm going to ask you at the end to confirm

21  whether or not this is indeed the case.

22         MS. KASULIS:  So Your Honor, based on my discussions

23  with counsel and with both Mr. and Mrs. Bernardone, they agree

24  to be suretors on a $750,000.00 secured bond.  They've agreed

25  to post their property located at 3211 Country Club Road.  I

7

1   believe that's in the Bronx, is that right?

2               MR. BERNARDONE:  Yes, right.

3               MS. KASULIS:  New York.  There's approximately

4   $500,000.00 equity in the property.  They do own it outright.

5   There are no liens or any other debts that either suretor has.

6   Additionally, they are both retired.  They do both receive

7   separate pension amounts.  Lorraine Bernardone receives

8   approximately $2,600.00 a month and Louis Bernardone receives

9   approximately $3,000.00 in his pension amount.  Neither one of

10  them have any dependants or anyone who's relying on them

11  financially.

12              THE COURT:  Is that correct Mr. --

13              MR. BERNARDONE:  That's correct.

14              THE COURT:  Ms. --

15              MS. BERNARDONE:  Yes.

16              THE COURT:  -- Bernardone?  Okay.  So you own your

17  house free and clear of any mortgages?

18              MS. BERNARDONE:  Yes.

19              MS. BERNARDONE:  Yes, Your Honor.

20              THE COURT:  Now, the one thing I just want you to

21  understand is the nature of the charges against James

22  Bernardone.  There are many, many counts against him including

23  a racketeering conspiracy with respect to the Genovese Family,

24  extortion, and several counts of extortion in the indictment.

25  And if he is convicted, he would undoubtedly face a long prison

8

1    sentence.  Do you understand?  And so if he does not come back

2    to face the charges, you risk losing your home.

3           Now, let me go over the conditions of release then

4    that are being proposed with respect to Mr. Bernardone, and

5    it's important you understand them because if he doesn't

6    comply, you could lose -- you could be subject to the

7    collection efforts of the Government on the amount of the bond.

8    So the travel will be restricted to the Eastern and Southern

9    Districts of New York.  That means New York City, Long Island,

10   and up north through Albany.  You're not to have any contact

11   with any of your co-defendants except in the presence of

12   counsel, and I want all of the defendants to listen in so when

13   I say no contact, I mean absolutely no form of communication

14   either face to face, electronically, over the telephone, over

15   the internet, through third parties, by mail.  Absolutely no

16   contact.  And you're not to have anything to do with any of the

17   named co-defendants except in the presence of your counsel and

18   the attorney for any of your co-defendants.  You're also not to

19   have any contact with any members or associates of organized

20   crime.  Did all the defendants hear this?

21             ALL DEFENDANTS:  Yes.

22             THE COURT:  Yes.  Okay.  Now, Mr. Bernardone is not

23   to apply for any passport.  Is there one to be surrendered?

24             MS. KASULIS:  I believe he does not have a passport.

25             THE COURT:  Is that correct?

9

1          MR. DiGIANSANTE:  That's correct, Your Honor.

2          THE COURT:  And he will be placed under the

3     supervision of Pre-trial Services and subject to random

4     inspections at your place of employment and home.  And also,

5     you will have to report to Pre-trial Services as directed.  Do

6     you understand?  You're also to surrender your firearms to --

7     where are they ordinarily surrendered?

8          MS. KASULIS:  To the police department, the local

9     police.

10         THE COURT:  To the police department?  Okay.  To the

11    police department and get a receipt, and then turn that in to

12    Pre-trial Services.

13         MR. DiGIANSANTE:  Your Honor, on that note, Mr.

14    Bernardone, as is reflected in the report, had a firearm

15    registered, a shotgun registered in Bronx County.  He has not

16    seen it since October of 2010.  I just had an opportunity to

17    confer with him about that.  His mother actually went down to

18    file a police report sometime after it went missing.  It was

19    left in a girlfriend's apartment who he broke up with and he

20    has not seen it since.  So I just wanted to put on the record

21    that, for the Government and the Court, that he cannot

22    surrender his firearm because, excuse me, he doesn't know where

23    it is, Your Honor.

24         MS. KASULIS:  Your Honor, this was discussed --

25         THE COURT:  Okay.

1          MS. KASULIS:  -- with the Government.  The Government

2    has requested a copy of the police report in order to verify

3    that story with respect to the firearm.

4          THE COURT:  Okay.  All right.  Fine.  So you'll

5    provide satisfactory proof.

6          MR. DiGIANSANTE:  Yes, Your Honor.

7          THE COURT:  Now, the final condition of release, and

8    this also applies to all of the other defendants, is that you

9    not commit any other crime while on release.  And I'm advising

10   you that if you tamper with evidence, intimidate witnesses, or

11   otherwise obstruct an investigation, those are federal crimes

12   and you could be subject to greater penalties than could

13   ordinarily be imposed if you commit those upon release.  Do you

14   understand?  Yes?

15         ALL DEFENDANTS:  Yes.

16         THE COURT:  Okay.

17         MS. KASULIS:  Your Honor, with respect to Mr.

18   Bernardone, there is in the Pre-trial Services report a history

19   of, you know, some mental health and drug related issues.

20         THE COURT:  Okay.

21         MS. KASULIS:  Pre-trial Services has asked for, you

22   know, any kind of evaluations, testing, or counseling as deemed

23   necessary by Pre-trial Services.  The Government has asked for

24   that condition also --

25         THE COURT:  Yes.  I think that's appropriate.

11

1              MS. KASULIS:  Thank you, Your Honor.

2              THE COURT:  So you will be subject to random drug

3    testing, testing for drugs, evaluation and treatment for

4    substance abuse, alcoholism and any mental health problems as

5    directed by Pre-trial.  Understand?

6              DEFENDANT BERNARDONE:  Yes.

7              THE COURT:  Now, while I discuss the conditions of

8    release with the other defendants, I'll ask Mr. and Mrs.

9    Bernardone to cosign the bond.  Someone already -- you'll have

10   to squeeze in your signatures above the printed name.

11             MS. KASULIS:  That was me trying to be helpful.

12             THE COURT:  Okay.

13             MS. KASULIS:  Sorry, Your Honor.

14             THE COURT:  Okay.  You'll need more form training how

15   to fill out forms.

16             MS. KASULIS:  I don't purport to kind of do Felix's

17   job.

18             THE COURT:  I'll just ask you to -- you know, maybe

19   what we can do if we can, I'll just rewrite their names on the

20   bottom.

21             MS. KASULIS:  I think I'll just stick to my day job.

22             THE COURT:  Okay.  Anyway, I'd like the sureties to

23   sign on both the printed names, on the line above the printed

24   names on the last line and as well as the defendant.  Then

25   we'll move on to the next defendant.  Okay.

12

1          MR. FROCCARO:  I think it's Mr. Ellis.

2          MS. HECTOR:  Certainly, Your Honor.  With respect to

3     Mr. Ellis, there's an agreed upon bail package.  It is a

4     $750,000.00 bond signed by three individuals and secured by a

5     property which I'll include information about.  And the

6     Government agreed to this contingent upon the property

7     appraising with an equity of at least $500,000.00 which defense

8     counsel and the owner of the property believes that it will.

9          The various suretors are John Desimone who is a long

10     time family friend who describes himself as kind of like an

11     uncle figure to the defendant.  He's known the defendant the

12     defendant's whole life.  He owns a bakery that's located in

13     Astoria that he's owned for 14 years, Desimone Bakery.  He

14     makes between 70 and $75,000.00 a year.

15          THE COURT:  Just a minute.  Are they here?

16          MR. FROCCARO:  Desimone is here, Your Honor.  The

17     other two, Judge, are not.  They're going to give them time.

18          THE COURT:  Okay.  Well, why don't you ask John

19     Desimone to step up?

20          MR. FROCCARO:  He's right here, Your Honor.

21          MS. HECTOR:  He's here.

22          MR. FROCCARO:  Right next to me.

23          THE COURT:  Oh, you are here.  Okay.  Let me ask you

24     to take an oath right now and --

25          THE CLERK:  Please raise your hand.

13

1          (AT THIS TIME THE WITNESS, JOHN DESIMONE, WAS SWORN.)

2              THE CLERK:  Please state your name for the record and

3    speak loudly so we can record you.

4              MR. DESIMONE:  John Desimone.

5              THE CLERK:  Thank you.

6              THE COURT:  Okay.  And I'm going to ask you to listen

7    carefully.  Have you heard what Ms. Hector has already said

8    about --

9              MR. DESIMONE:  Yes.

10             THE COURT:  -- your financial condition?  And I will

11   ask you if it's correct after she finishes.

12             MS. HECTOR:  Yes, Your Honor.  So he makes between 70

13   and $75,000.00 per year and he and his wife together, his

14   wife's name is Michelle Desimone, own property located at 28

15   Narcissus Drive in Syosset, New York.  And he estimates that

16   the home has an approximate worth of $900,000.00 and he has

17   about $130,000.00 left on the mortgage, which would suggest a

18   significant amount of equity.  As I said, he works at a bakery.

19   His wife works part time at an OTB.

20             THE COURT:  Okay.

21             MS. HECTOR:  The other suretor would be Mr. Ellis'

22   mother who couldn't be here today but will be here by the end

23   of the week to sign.

24             THE COURT:  And what is her first name?

25             MR. FROCCARO:  It's Mariann E-L-L-I-S, Your Honor.

14

1   Mariann, M-A-R-I-A-N-N.

2           THE COURT:  Okay.  So Mr. Desimone, I just want you

3   to understand the nature of the charges against Mr. Ellis.

4   He's been charged in four counts.  The first count is the

5   racketeering conspiracy with respect to the Genovese crime

6   family, and he's also separately charged on counts relating to

7   extortion in connection with a labor union, as well as

8   gambling.  And if he is convicted, he could face a substantial

9   prison sentence.  Do you understand?

10          MR. DESIMONE:  Yes.

11          THE COURT:  Okay.  And is information as related by

12  Ms. Hector correct --

13          MR. DESIMONE:  Yes.

14          THE COURT:  -- regarding your home, your ownership?

15          MR. DESIMONE:  Yes.

16          THE COURT:  And your wife is the other co-owner of

17  the property?

18          MR. DESIMONE:  Yes.

19          THE COURT:  I'm going to require that you not have

20  any further liens placed on your home.  I didn't tell the other

21  sureties but I'm sure their attorneys know the home, the lien

22  on the home will have to be filed by next week, Wednesday,

23  April 25th.  Understand?

24          MR. DiGIANSANTE:  Yes, Your Honor.

25          MR. FROCCARO:  Judge, and the other two suretors will

15

1   have till I believe Friday to --

2          THE COURT:  Yes, by the 20th, to comply.  So let me go

3   over the conditions with Mr. Ryan.  Now, your travel will be

4   restricted to the Southern and Eastern Districts of New York.

5   As you've already heard, you know where that is, right?  I've

6   already told you about not having contact with co-defendants

7   and associates of organized crime.  His passport?  Does he have

8   a passport?

9          MS. HECTOR:  [Unintelligible] that he didn't have a

10  passport.

11         THE COURT:  Okay.  And you're not to apply for any

12  passport.  You'll be placed under the supervision of Pre-trial

13  Services and will be subject to random visits at home and at

14  your place of employment and will have to report to Pre-trial

15  Services as directed.  You'll have to -- Mr. Desimone, you'll

16  have to show proof of the equity in your house, that it's in

17  excess of half a million dollars, and that proof has to be

18  submitted by Friday.

19         MR. FROCCARO:  Judge, if we can have till Wednesday

20  on that as well?

21         THE COURT:  All right.  That's fine.  And you also

22  understand the condition about not committing any further

23  crimes?

24         DEFENDANT ELLIS:  Yes.

25         THE COURT:  I'll ask Mr. Desimone to cosign the bond

16

1   as well as --

2           THE CLERK:  Sign your name [inaudible].

3           THE COURT:  Mr. Squitieri?  Well, I'll have you step

4   up again a little later on.

5           MR. FROCCARO:  Do you want him up here, Judge?

6           THE COURT:  He can sit down but he'll have to come

7   back up at the end.

8           MR. FROCCARO:  Okay.

9           THE COURT:  You want to sit?  You can have a seat.

10  Why don't you go down and sit in the first row there.  I see

11  you need to sit down.  Okay.  Mr. Squitieri?

12          DEFENDANT SQUITIERI:  Yes, Your Honor.

13          THE COURT:  Okay.

14          MS. KASULIS:  All right.  Your Honor, with respect to

15  Mr. Squitieri, there are two potential suretors.  There's a

16  bond amount of $5500,000.00 secured by a property owned by Mr.

17  Squitieri and his wife, Donna, who's agreed to be one of the

18  suretors.  An additional suretor would be his sister, Joan

19  Penzer.  Should we bring them up?

20          THE COURT:  The judge is going to ask some questions.

21  I'm going to put you under oath.  Please raise your hand.

22   (AT THIS TIME THE WITNESSES, DONNA SQUITIERI AND JOAN PENZER

23  WERE SWORN.)

24          THE CLERK:  Please state your name for the record and

25  speak loudly so we can record you.

17

1          MS. SQUITIERI:  Donna Squitieri.

2          MS. PENZER:  Joan Penzer.

3          THE CLERK:  Thank you.

4          THE COURT:  Okay.  You've taken an oath to tell the

5    truth.  I want you to listen carefully to what Ms. Razulo [sic]

6    is going to be stating and I will ask you to confirm whether or

7    not what she has stated is correct.

8          MS. KASULIS:  Okay.  With respect to the property

9    that's co-owned by John Squitieri and his wife Donna, that

10   property was purchased approximately three to four years ago

11   for approximately $630,000.00.  Mrs. Squitieri estimates

12   there's approximately $250,000.00 worth of equity in the house

13   and that's to secure the $500,000.00 bond.  She is not

14   currently employed.  She does -- is a homemaker, is that right?

15         MS. SQUITIERI:  Yes.

16         MS. KASULIS:  Okay.  Additionally, with respect to

17   Joan Penzer, Mr. Squitieri's sister, she's employed as a

18   teacher's aide.  She's maintained that employment for the last

19   six years.  She makes approximately 18,000 a year.  She has

20   notified the Government that, you know, [inaudible] that Ms.

21   Penzer does have proof of significant savings as well --

22         THE COURT:  Okay.

23         MS. KASULIS:  -- in support of the bond.

24         THE COURT:  Okay.  Is that correct, Ms. Squitieri and

25   Ms. Penzer?

18

1          MS. PENZER:  Yes.

2          THE COURT:  Okay.  So you do have savings --

3          MS. PENZER:  Yes.

4          THE COURT:  -- that would be at risk?

5          MS. PENZER:  Yes.

6          THE COURT:  Okay.  I just want you to understand the

7   nature of the charges against Mr. Squitieri.  He actually has

8   only one count against him.

9          MS. KASULIS:  That's correct.  Count 8, Your Honor.

10          THE COURT:  Right.  And that's for union

11   embezzlement.

12          MS. KASULIS:  That's correct.

13          THE COURT:  And while it is not quite as serious

14   perhaps as some of the other charges, it's still a serious

15   charge and he could face a substantial prison sentence if he is

16   convicted of the charge.

17          Now, the bond has been set in the amount of

18   $500,000.00 and it's to ensure his compliance with the

19   conditions of release.  And I'll go over them right now.  I

20   think you've probably heard me go over the conditions of

21   release with respect to some of the co-defendants and they're

22   quite similar, but it's important you understand what they are.

23   Mr. Squitieri, you should listen carefully too because if you

24   don't comply, the Government could come back to court and seek

25   to have you detained.

19

1                  Now, the bond has been set in the amount of
2     $500,000.00.  The most important condition is that you come
3     back to court, and if you don't, the court will issue a warrant
4     for your arrest and you could be prosecuted for failing to
5     appear in court.  Your travel will be restricted to the
6     Southern and Eastern District of New York, and you know what
7     that means I assume, right?
8                  DEFENDANT SQUITIERI:  Yeah.
9                  THE COURT:  Yes.  You're not to have any contact with
10    your co-defendants or members of organized crime, as well as
11    associates of organized crime.  You're not to apply for any
12    other passport.  And is there a passport?
13                 MS. KASULIS:  I believe he does have a passport, Your
14    Honor.
15                 THE COURT:  Okay.  So I'm going to ask that you
16    surrender it by Friday.
17                 DEFENDANT SQUITIERI:  Yes, Your Honor.
18                 THE COURT:  You're placed under the supervision of
19    Pre-trial Services and will be subject to random visits at home
20    and place of employment and will have to report as directed by
21    Pre-trial Services.  You're also to surrender any firearms you
22    may have.  I didn't actually put a time limit on this.  Perhaps
23    a week for Mr. Squitieri as well as Mr. Bernardone?
24                 MR. PAKOLA:  Yes, Your Honor.
25                 THE COURT:  Okay.  And you're to do so by

1    surrendering the firearms to the police department and you'll

2    get proof.  Provide whatever proof that you've done so to the

3    Government by April 25th.  And you're also not to commit any

4    other crime as I've already instructed.  So do you all

5    understand the conditions of release?

6              MS. SQUITIERI:  Yes.

7              THE COURT:  Okay.  So I'll ask Ms. Squitieri and Ms.

8    Penzer to sign on the bottom line above the printed name.

9              Mr. Zarzana?

10             DEFENDANT ZARZANA:  Yes.

11             THE COURT:  His surety?  One surety?

12             MS. KASULIS:  Yes, Your Honor.  His one surety is

13   Rosemary Diblasey [Ph.] who is in the back of the courtroom.

14   The Government conditions --

15             THE COURT:  Okay.  Why don't you have her come up?

16             THE CLERK:  The judge is going to ask some questions

17   so I'll put you under oath.  Please raise your hand.

18     (AT THIS TIME THE WITNESS, ROSEMARY DIBLASEY, WAS SWORN.)

19             THE CLERK:  Please state your name for the record and

20   speak loudly so we can record you.  Your name?

21             MS DIBLASEY:  Rosemary Diblasey.

22             THE CLERK:  Thank you.

23             THE COURT:  Okay.  You've taken an oath to tell the

24   truth and I want you --

25             MR. MURE:  You've got to talk a little louder, Judge.

```
1              THE COURT:  Okay.  You've taken an oath to tell the
2   truth and I'm going to be asking you questions to confirm that
3   what Ms. Razulo is going to be stating right now about your
4   financial condition is true.  So it's important you listen
5   carefully.
6              MR. MURE:  Just listen to the judge.
7              THE COURT:  First listen to Ms. Razulo and I'm going
8   to ask you whether or not what she says is true and correct.
9              MS. KASULIS:  I'm going to try to speak out.
10             THE COURT:  Why don't you just come around the side.
11             MS. KASULIS:  I'll come around.
12             THE COURT:  I think that might be easier.
13             MR. MURE:  Which ear?  This one?  Both?
14             THE COURT:  Well, if you're going to lose any senses,
15  that's the best one.
16             MS. KASULIS:  Okay.  Your Honor, the proposed agreed
17  upon bail package is for $750,000.00.  Mr. Zarzana is charged
18  with two counts, they're extortion counts.  And at the time of
19  the charged counts, Mr. Zarzana was the president of Local 926,
20  the Carpenters Union.  Additionally, as set forth in the
21  detention memo, Mr. Zarzana is a member of the Genovese crime
22  family.  With respect to the security for the bond, there will
23  be one property posted by Ms. Diblasey, who's here today.  The
24  property is worth approximately one million.  There is a
25  $150,000.00 outstanding mortgage on the property.  Ms. Diblasey
```

22

1  is currently retired.  She was a hairdresser.  Her source of

2  income, she has two tenants that reside in the building and she

3  receives monthly income based on rent.  And additionally, she

4  does receive a small social security amount.  My understanding

5  from interviewing Ms. Diblasey that she has a close

6  relationship with Mr. Zarzana, has known him since he was a

7  child.  He refers to her as his aunt, although they are not

8  blood related.  And additionally, based on the Pre-trial

9  Services report, there is some inconsistency between what Mr.

10  Zarzana recorded as the nature of his familial relationships as

11  compared to James Diblasey, Rosemary Diblasey's son, who Mr.

12  Zarzana refers to as a cousin.  He's actually verified slightly

13  different information.  Based on that inconsistency, the

14  Government would like an additional suretor and has proposed

15  that Mr. Diblasey come in by the end of the week and

16  additionally sign the bond.  And with that condition, the

17  Government does propose this joint package to Your Honor.

18              MR. MURE:  But he will be released today?

19              MS. KASULIS:  Yes.

20              THE COURT:  Okay.

21              MS. KASULIS:  We would agree to his release today

22  contingent on Mr. Diblasey or a relative of Mr. Zarzana, a

23  similarly situated suretor to come in and cosign on the bond.

24              THE COURT:  Okay.  Is Mr. Diblasey prepared to cosign

25  the bond?

23

1          MR. MURE:  He is, Judge.  I spoke to him.

2          THE COURT:  Okay, fine.

3          MR. MURE:  I spoke to him by phone.  He's watching

4  his two little kids and --

5          THE COURT:  Okay, fine.

6          MS. KASULIS:  If he comes in by the end of the week,

7  Your Honor, the Government is satisfied.

8          THE COURT:  Okay.  Now, Ms. Diblasey, is what Ms.

9  Razulo just said correct?

10          MS. DIBLASEY:  Yes.

11          THE COURT:  Okay.  And how did you come about to

12  owning this property?

13          MS. DIBLASEY:  Well, we --

14          THE COURT:  How did you own this -- how long have you

15  owned this property?  What?

16          MS. DIBLASEY:  My mother, my father and my husband

17  and I.

18          THE COURT:  Okay.  So you --

19          MS. DIBLASEY:  [Inaudible].

20          THE COURT:  Your mother, your parents and your

21  husband and you bought the property?

22          MS. DIBLASEY:  Yes.

23          THE COURT:  Okay.  All right.

24          MR. MURE:  Worth a lot less back then, Judge.

25          THE COURT:  It was probably worth --

24

1          MS. DIBLASEY:  As much [inaudible].

2          THE COURT:  It cost a lot less.  It was probably

3     still priceless.

4          MS. KASULIS:  They bought it pursuant to the GI Bill,

5     so --

6          THE COURT:  Okay.  No, I just wanted to make sure on

7     her income that she was able to acquire this kind of property.

8     Okay.  And do you understand the nature of the charges against

9     --

10          MR. MURE:  The charges against Sal.

11          THE COURT:  -- Mr. Zarzana.  All right.  Fine.  Now,

12     let me ask Mr. Desimone to step up and I'll warn everybody

13     about your obligations as sureties.

14          MS. KASULIS:  Your Honor, can I step back around?

15          THE COURT:  Yes.

16          MS. KASULIS:  Thank you.

17          THE COURT:  Actually, I didn't go over the conditions

18     with respect to Mr. Zarzana, but I'll do that later.

19          Those of you who are agreeing to sign a bond in the

20     amounts that we've discussed earlier, I just want to warn you

21     that you risk owing the Government the amount of the bond if

22     your relative or friend fails to comply with the conditions of

23     release that we discussed.  And the Government can collect from

24     just one of you or from all of you.  As you know, there are

25     some of you who are having liens placed on the properties you

25

1  own, so you risk losing your properties.  And I actually didn't

2  explain this clearly before, but houses that are forfeited

3  rarely are sold for the market value, so you still risk being

4  subject to the collection efforts of the Government up to the

5  amount of the bond.  Do you understand?

6            MULTIPLE SPEAKERS:  Yes.

7            THE COURT:  Yes.  Okay.  And I'm just going to hold

8  up these various bonds now.  I want to confirm these are your

9  signatures and that you understand the terms of the bond.

10 Lorraine Bernardone and Louis Bernardone?

11            MS. BERNARDONE:  Yes.

12            THE COURT:  You understand?

13            MS. BERNARDONE:  Yes.

14            THE COURT:  Yes?  Okay.  This is --

15            MR. BERNARDONE:  Yes.

16            THE COURT:  -- your signature?  Okay.  John Desimone?

17 Mr. Desimone, this is your signature?

18            MR. DESIMONE:  Yes.

19            THE COURT:  And you understand the bond?

20            MR. DESIMONE:  Yes.

21            THE COURT:  Okay.  Donna Squitieri and Joan Penzer,

22 do you understand the bond you've signed?

23                      [No audible response.]

24            THE COURT:  Ms. Diblasey, do you understand the bond

25 you signed?

26

1              [No audible response.]

2         THE COURT:  Yes?  Okay.  And it's John Diblasey who's

3    --

4         MR. MURE:  James.

5         THE COURT:  James Diblasey.  Okay.

6                   [Pause in proceedings.]

7         THE COURT:  Now, I want you to understand the

8    conditions of release, Ms. Diblasey, because that's the

9    $750,000.00 bond that you're signing, that you've signed, is to

10   ensure compliance with the conditions, and Mr. Zarzana, you

11   should listen carefully so you won't cause hardship to Ms.

12   Diblasey.  You're to come back to court whenever required.  And

13   as you know, the Court will issue a warrant for your arrest and

14   you could be prosecuted for failing to appear in court.  Your

15   travel will be restricted to the Eastern and Southern District

16   of New York.  You're not to have any contact with your co-

17   defendants and members of organized crime.  You're to surrender

18   your passport.  Does he have one, Ms. Razulo?

19         MS. KASULIS:  I don't believe he does.

20         THE COURT:  Okay.

21         MS. KASULIS:  And Your Honor, with respect to his

22   travel restrictions, my understanding from defense counsel is

23   that Zarzana has a son who lives in Pennsylvania that he does

24   visit regularly.

25         MR. MURE:  That's correct.

27

1           THE COURT:  I'll permit travel on prior notice to

2  Pre-trial Services.

3           MR. MURE:  He usually goes every other week, Judge.

4           THE COURT:  Oh, okay.

5           MR. MURE:  [Inaudible] --

6           THE COURT:  Okay.  Travel to see son in Pennsylvania.

7  Where in Pennsylvania?

8           DEFENDANT ZARZANA:  Hawley.  Hawley.  It's outside of

9  Milford.

10          THE COURT:  Where?

11          DEFENDANT ZARZANA:  Hawley.  It's H-A-W-L-E-Y.  It's

12  outside of Milford, Pennsylvania.

13          THE COURT:  Okay.

14          DEFENDANT ZARZANA:  It's approximately a two and a

15  half hour drive.

16          THE COURT:  Okay.  And you'll also not -- you're not

17  to apply for any other passport.  You'll be placed under the

18  supervision of Pre-trial Services and will have to report as

19  directed by Pre-trial Services, and will be subject to random

20  visits by a Pre-trial Services officer at your home and place

21  of employment.  You're to surrender your firearms by April 25th,

22  which is next week.

23          MR. MURE:  He has no firearms.

24          THE COURT:  No firearms?  Okay.  Mr. James Diblasey

25  is to cosign the bond by April 20th.

28

1          Now, all of you who have cosigned the bond, I just

2    want you to understand this is a serious legal obligation and

3    do all of you want to remain on the bond?

4             FEMALE SPEAKER:  Yes.

5             THE COURT:  Yes?  Okay.  Okay.

6             ALL:  Thank you.

29

1        I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4                                    *Mary Greco*

5                        _____

6                                    Mary Greco

7   Dated:  May 24, 2013

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25