

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK
F.#2008R00052

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 4, 2014

By ECF

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. James Bernardone
               Crim. Docket No. 12-264 (NGG)

Dear Judge Garaufis:

      The government submits this sentencing memorandum in anticipation of the defendant James Bernardone's sentencing, which is scheduled for August 5, 2014 at 5:30 p.m. As detailed below, a sentence within the range of imprisonment set forth by the United States Sentencing Guidelines ("Guidelines") is appropriate here.

    I.    Background

      As set forth in the Presentence Investigative Report ("PSR"), on November 27, 2013, the defendant, a member of the Genovese organized crime family of La Cosa Nostra ("Genovese crime family") pleaded guilty before the Court to Count One of the indictment, which charges him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (PSR ¶ 1). Within Count One of the indictment, Bernardone pleaded guilty to Racketeering Acts Two and Eight. (PSR ¶¶ 2, 3). Specifically, as set forth in more detail below, Racketeering Acts Two and Eight charge the defendant with extortion conspiracy and extortion relating to work performed by John Doe #1 at two different construction sites in New York City.[1] (PSR ¶¶ 2, 3).

---

[1] In Count One of the indictment, Bernardone is also charged in Racketeering Act One, which charges extortion conspiracy and extortion relating to work performed by John Doe #1 at another construction site in New York City. (PSR ¶¶ 4, 14-16).

In approximately 2006, Bernardone introduced co-defendant Paul Gasparrini to John Doe #1. (PSR ¶ 12). Between 2007 and 2009, John Doe #1 acted as a trucking broker for a variety of construction projects at the behest of Bernardone and Gasparrini. (PSR ¶ 12). In approximately mid-2006, John Doe #1 discussed with Bernardone the possibility of him partnering with the owner of a company called Ecology, a trucking company in New Jersey that specialized in removing contaminated soil. (PSR ¶ 13). In late 2006/early 2007, Gasparrini introduced John Doe #1 to the owner of a contracting company (the "contractor"). (PSR ¶ 13). The contractor was "controlled" by co-defendant Salvester Zarzana, the president of Local 926 of the United Brotherhood of Carpenters and Joiners at the time and Genovese crime family soldier. (PSR ¶ 13). Zarzana obtained work at various construction sites for the contractor, who would then subcontract the removal of contaminated soil, which required the trucker to have a certain kind of license that the contractor did not have, to John Doe #1. (PSR ¶ 13). John Doe #1 would then partner with Ecology to remove the contaminated soil. (PSR ¶ 13). In order for John Doe #1 and Ecology to obtain the work, however, they had to provide a kickback to Gasparrini, who would, in turn, provide a portion of that money to Bernardone and others in the Genovese crime family. (PSR ¶ 13).

   a. Racketeering Act Two – Flatbush Avenue

In June 2006, Gasparrini and John Doe #1 discussed the possibility of John Doe #1 working on a construction site located at the intersection of Gold Street, Johnson Street and Flatbush Avenue in Brooklyn, New York (the "Flatbush Avenue project"). (PSR ¶ 16). The general contractor of the Flatbush Avenue project was a company called JCI, and the subcontractor for the excavation and foundation work was a company called Racine. (PSR ¶ 16). Gasparrini told John Doe #1 that he and Ecology would provide contaminated soil removal services for Racine. (PSR ¶ 16). Gasparrini noted that Zarzana was "behind" John Doe #1 and Ecology getting the work at the site. (PSR ¶ 16).

Gasparrini wanted more than his usual $2.00 per load "commission" from John Doe #1 and Ecology for work performed on the Flatbush Avenue project because he needed to "kick up" a portion of his proceeds to Genovese crime family members, including Bernardone and Zarzana, and Gasparrini wanted to make more money. (PSR ¶ 17). John Doe #1 performed contaminated soil removal at the job site. (PSR ¶ 18). Racine was slow to pay John Doe #1 and Ecology. (PSR ¶ 18). After multiple attempts to obtain money from Racine, Racine eventually paid John Doe #1 and Ecology the money owed to them for their work on the project. (PSR ¶ 18). John Doe #1 paid Gasparrini for his "influence" on the Racine project, and Gasparrini paid a portion of the money to Zarzana and Bernardone. (PSR ¶ 18). John Doe #1 understood that if he did not pay Gasparrini, Bernardone and Zarzana in connection with the Flatbush Avenue project, they would prevent him from obtaining work at other construction sites or possibly retaliate through violence.[2] (PSR ¶ 18).

---

[2] John Doe #1 never received any threats of violence from Bernardone or Gasparrini.

b. Racketeering Act Eight – 60th Lane

Bernardone introduced John Doe #1 to an individual who had a "hook" into his employer, Express Construction. (PSR ¶ 22). In 2008, Bernardone discussed with John Doe #1 a project managed by Express Construction on 60th Lane in Queens, New York (the "60th Lane project"). (PSR ¶ 22). John Doe #1 met with the individual from Express Construction and was told that he had to meet the price of the other companies' proposals regarding removal of concrete, dirt, and other debris from the job site, and John Doe #1 would be awarded the contract. (PSR ¶ 22). John Doe #1 could load the containers used for debris removal "light," meaning that John Doe #1 could not entirely fill the containers before removing them from the job site so that John Doe #1 could overbill for work performed. (PSR ¶ 22).[3] Bernardone and the individual from Express Construction each received $25 in kickbacks for each container removed from the 60th Lane project. (PSR ¶ 23). John Doe #1 also billed for two "phantom" containers, meaning containers that were never provided to the 60th Lane project. (PSR ¶ 23).

John Doe #1 paid both the individual from Express Construction and Bernardone their kickbacks. (PSR ¶ 24). John Doe #1 paid Bernardone for his "influence" on the 60th Lane project. John Doe #1 understood that if he did not pay Bernardone in connection with the 60th Lane project, he would seek retribution by preventing him from obtaining work at various construction sites, and would possibly retaliate through violence. (PSR ¶ 24).

II.  Guidelines Calculation

The Probation Department ("Probation") calculated Bernardone's base offense level for each racketeering act to be 20 pursuant to § 2B3.2 of the Guidelines because it included a two-point enhancement for implied threat of bodily injury for each racketeering act. (PSR ¶¶ 35, 41, 48, 54). Probation also included a three-point enhancement for each racketeering act pursuant to § 3B1.1(b) of the Guidelines based on Bernardone's role as a Genovese crime family soldier. (PSR ¶¶ 25, 37, 43, 49). Additionally, Probation included in its Guidelines calculation the racketeering act in Count One with which Bernardone was charged but did not plead guilty. (PSR ¶¶ 25, 46-51). With the additional racketeering act, Probation calculated the multiple racketeering act adjustment to be three points instead of two points, resulting in an offense level of 26. (PSR ¶ 52-55). With a three-point reduction for timely acceptance of responsibility pursuant to §§ 3E1.1(a) and (b) of the Guidelines and a two-level global plea reduction pursuant to § 5K2.0 of the Guidelines,[4] Bernardone's

---

[3]  John Doe #1 was paid based on the number of containers of debris removed. (PSR ¶ 22).

[4]  Bernardone and his co-defendants satisfied the conditions set forth in their plea agreements to warrant a two-point global plea reduction.

3

adjusted offense level according to the PSR is 21. (PSR ¶¶ 57-58, 104). With a Criminal History Category of III, Bernardone's Guidelines range of imprisonment, according to Probation, is 46 to 57 months.

The government's plea agreement, by contrast, estimates the defendant's total offense level to be 15. The government's calculation of the base offense level does not include the two-point enhancement for the implied threat of bodily injury to Racketeering Acts Two and Eight, and does not include the other racketeering act with which Bernardone is charged but did not plead guilty as relevant conduct in calculating his adjusted offense level.[5] Accordingly, the base offense level for Racketeering Acts Two and Eight is 18, and the multiple racketeering act adjustment is two points instead of four points, resulting in an adjusted offense level of 20. With a three-point reduction for timely acceptance of responsibility pursuant to §§ 3E1.1(a) and (b) of the Guidelines, and a two-level global plea reduction pursuant to § 5K2.0 of the Guidelines, the government estimates that the adjusted offense level is 15. The plea agreement estimated Bernardone's criminal history to be Category II instead of Category III. Accordingly, the plea agreement estimated Bernardone's Guidelines range of imprisonment to be 21 to 27 months.

It appears that both parties underestimated Bernardone's criminal history during plea negotiations. Accordingly, while the government and Bernardone are in agreement that the adjusted offense level should be 15, Probation correctly calculated Bernardone's criminal history to be Category III because Bernardone was serving a conditional discharge for a DUI offense when he committed the offense conduct contained in Count One.[6] (PSR ¶ 64). Accordingly, Bernardone's Guidelines range of imprisonment should be 24 to 30 months.

III.     Bernardone's Sentence

A sentence within the applicable Guidelines range of imprisonment is appropriate in this case. The only way that Bernardone, the Secretary Treasurer of Local 124 of the International Union of Journeymen and Allied Trades at the time of the offense, was in

---

[5]     The government does not intend to present evidence or otherwise argue at sentencing in support of a two-level Guidelines enhancement for implied threat of bodily injury. While the government does not dispute the potential applicability of that enhancement in light of the facts and circumstances of this case, the government stands by the Guidelines estimate set forth in the plea agreement. Additionally, the government is not prepared to prove at sentencing the crime charged in the other racketeering act with which Bernardone is charged but did not plead guilty.

[6]     Both racketeering acts to which Bernardone pleaded guilty post-date the date upon which Bernardone's DUI was discharged. (PSR ¶ 62). The charged date range for Count One, however, does encompass a period of time in which Bernardone was on conditional discharge.

a position to extort John Doe #1 and others at various construction sites throughout New York City was through his association with the Genovese crime family.  Bernardone's participation in extortion conspiracy and extortion at these construction sites inflated the cost of the projects and caused John Doe #1 to fear that if he did not pay Gasparrini's "commission" (a portion of which Gasparrini paid to Bernardone), he could not obtain work at other construction sites.  Notably, Bernardone did not appear to play any legitimate role at the construction sites at which John Doe #1 worked, and as a union official, he understood the impact of his actions on the individuals working at the construction sites and the contractors funding those projects.

Organized crime's influence and control in the construction industry throughout New York City is well known and pervasive.  A sentence within the Guidelines range specifically deters Bernardone from continuing to associate with organized crime and sends a message to Genovese crime family members and associates that using their "influence" at various construction sites throughout New York City will not be tolerated.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/Jacquelyn M. Kasulis
Jacquelyn M. Kasulis
Amanda Hector
Assistant U.S. Attorneys
(718) 254-6103/6212

cc: Lawrence DiGiansante, Esq.
Jennifer Fisher, U.S. Probation Officer

5