```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 12-CR-00264(NGG)
                               :
                               :
                               :
        versus                 : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
JAMES BERNARDONE,              : Tuesday, August 5, 2014
                               : 1:39 p.m.
        Defendant.             :
                               :
                               :

- - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
        BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
              UNITED STATES DISTRICT JUDGE

                  A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                      United States Attorney
                      Eastern District of New York
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                    BY: JACQUELYN M. KASULIS, ESQ.
                        AMANDA HECTOR, ESQ.
                        Assistant United States Attorneys

For the Defendant:  LAW OFFICE OF LAWRENCE DIGIANSANTE
                        984 Morris Park Avenue
                        Bronx, New York 10462
                    BY: LAWRENCE DIGIANSANTE, ESQ.

Court Reporter:     SHERRY J. BRYANT, RMR, CRR
                    225 Cadman Plaza East
                    Brooklyn, New York 11201
                    sbryant102@verizon.net

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.
```

1               (In open court.)

2               (Defendant present.)

3               COURTROOM DEPUTY:  U.S. versus Bernardone.  Counsel,
4    state your appearances, please.

5               MS. KASULIS:  Jacquelyn Kasulis and Amanda Hector
6    for the government.  Good afternoon, Your Honor.

7               THE COURT:  Good afternoon.

8               MR. DiGIANSANTE:  Lawrence DiGiansante for Mr.
9    Bernardone.  Good afternoon, Your Honor.

10              THE COURT:  Good afternoon, Mr. DiGiansante.  Good
11   afternoon, sir.

12              Mr. Bernardone, has anything changed since
13   yesterday, in terms of the issue that we resolved yesterday at
14   the Curcio hearing?

15              THE DEFENDANT:  No, Your Honor.

16              THE COURT:  So everything remains in effect as it
17   was before.  Okay.

18              Mr. Bernardone, are you satisfied with the
19   assistance your attorney has given you thus far in this
20   matter?

21              THE DEFENDANT:  Yes, I am, Your Honor.

22              THE COURT:  This is a sentencing for James
23   Bernardone.  Mr. Bernardone, you pleaded guilty to Count One
24   of an indictment in 12-CR-264-S2, racketeering acts two and
25   eight; correct?

1  MS. KASULIS: I don't think it's S2, Your Honor. I
2 think it was the original indictment. I think it just
3 indicates maybe he's the second defendant.
4  THE COURT: Oh, I see. That's fine. It's 264.
5 There's no superseding indictment. I don't understand why
6 they put that down on the presentence report.
7  MS. KASULIS: I don't either. I haven't seen that
8 before.
9  THE COURT: All right. That's been clarified. I
10 have reviewed the following materials which have been provided
11 to me in connection with the sentencing. There is a
12 presentence investigation report dated June 5th, 2014.
13  Have you seen that, sir?
14  MR. DIGIANSANTE: I have, Your Honor.
15  THE COURT: Have you shared it with your client?
16  MR. DIGIANSANTE: I have.
17  THE COURT: Sir, have you had the opportunity to
18 review the presentence report?
19  THE DEFENDANT: Yes, Your Honor.
20  THE COURT: Okay. Has your attorney answered all
21 your questions about it?
22  THE DEFENDANT: Yes, Your Honor.
23  THE COURT: And do you understand its contents?
24  THE DEFENDANT: Yes, Your Honor.
25  THE COURT: Okay. All right. I have a sentencing

1  memorandum with attachments dated July 22nd, 2014, from Mr.
2  DiGiansante.  Has the government seen those materials?
3          MS. KASULIS:  Yes, Your Honor.
4          THE COURT:  Okay.  And I have a letter from the
5  government in the nature of a sentencing memorandum dated
6  August 4th, 2014.  Has the defense seen that document?
7          MR. DIGIANSANTE:  Yes, Your Honor.
8          THE COURT:  All right.  And I think that pretty much
9  covers the list of materials that I have for sentencing.  Is
10 there anything else?
11         MS. KASULIS:  No, Your Honor.
12         THE COURT:  Okay.  The first step -- am I right?
13         MR. DIGIANSANTE:  No, Your Honor.
14         THE COURT:  I'm not right or I'm right?
15         MR. DIGIANSANTE:  No, you're right.
16         THE COURT:  The next step is to calculate the
17 sentencing guideline, and I think that the presentence report
18 is not quite correct on the guideline calculation.  So let's
19 go over that, please.
20         MS. KASULIS:  Okay, Your Honor.  There appears to be
21 actually three differences between the PSR and the parties'
22 calculation of the offense conduct.  The first is the same
23 as -- the first two are actually the same as with Mr.
24 Gasparrini.  The government and defense counsel estimated the
25 base offense level to be 18 instead of 20.  We didn't include

that two-point implied threat enhancement as probation did.

The second difference is that probation --

THE COURT: Let's stop with that. Do you agree with the level 18?

MR. DIGIANSANTE: Yes, Your Honor.

THE COURT: All right. The Court agrees as well. Next.

MS. KASULIS: Next, probation included the two additional racketeering acts that Mr. Bernardone was charged with but did not plead guilty to. And the government and defense counsel in its plea agreement only based its calculation on the two racketeering acts that Mr. Bernardone did plead guilty to, resulting in a two-point multiple racketeering enhancement instead of a four-point enhancement.

Oh, I'm sorry, there was only one other racketeering act that Mr. Bernardone was charged with, so they did a three-point multiple racketeering act enhancement instead of the two points that are reflected in the plea agreement.

THE COURT: So we have two levels added, according to your calculation?

MS. KASULIS: Correct.

THE COURT: Do you agree with that?

MR. DIGIANSANTE: Yes, Your Honor.

THE COURT: The Court agrees as well. Okay. Next?

MS. KASULIS: Now, the third difference is that

1 probation -- because Mr. Bernardone is a soldier in the
2 Genovese Crime Family, probation added a three-point
3 managerial role enhancement to each racketeering act.
4     The government and defense counsel did not include
5 those three points in each of the racketeering act
6 calculations because, with respect to each racketeering act,
7 Mr. Bernardone appeared to be equally culpable with respect to
8 his coconspirators, and that's why we did not include that
9 enhancement.
10     THE COURT: All right. So I'm up to a 20.
11     MS. KASULIS: I think that is correct. And then
12 there's a two-point deduction for global resolution. Mr.
13 Bernardone did comply with the terms of -- the terms of the
14 global resolution in the plea agreement. And then the
15 three-point deduction for timely acceptance of responsibility
16 results in a 15.
17     THE COURT: Do you agree with that?
18     MR. DIGIANSANTE: Yes, Your Honor.
19     THE COURT: The Court agrees as well. Total offense
20 level is a 15. And with regard to criminal history?
21     MS. KASULIS: We have the same issue in this case as
22 we did with Mr. Gasparrini, where we estimated his -- Mr.
23 Bernardone's criminal history to be a category 2. It looks
24 like his conditional discharge for a DUI didn't expire until a
25 point at which for the range that was charged for the time

1 period of Count One, so probation estimated his Criminal
2 History Category to be III.
3 In the plea agreement, it is a II. It does appear,
4 going by the rules of the guidelines, that a III does apply.
5 However, it looks like the two racketeering acts that Mr.
6 Bernardone did plead guilty to postdate that date at which the
7 conditional discharge expired. It does appear that Criminal
8 History Category II is probably more appropriate, considering
9 the circumstances.
10 THE COURT: I'm going to establish a Criminal
11 History Category II, which is more appropriate. Do you have
12 any objection?
13 MR. DIGIANSANTE: No, Your Honor.
14 THE COURT: All right. So the total offense level
15 is a 15. Criminal History Category is II. Range of
16 incarceration is 21 to 27 months in the custody of the
17 Attorney General. Correct? Does everyone agree that that's
18 the proper guideline calculation?
19 MS. KASULIS: Yes, Your Honor.
20 MR. DIGIANSANTE: Yes, Your Honor.
21 THE COURT: So at this point, it's necessary for the
22 Court to consider all the factors that are relevant to this
23 defendant under 18 United States Code Section 3553(a) in order
24 to impose a sentence that is sufficient but not greater than
25 that necessary to fulfill the purposes of sentencing, and I'm

1  going to hear from the government first.

2           MS. KASULIS:  Your Honor, as the government noted
3  and as Your Honor noted during Mr. Gasparrini's sentencing,
4  there is a real concern here that these kinds of extortions
5  really are just the cost of doing business in the city.  Like
6  Mr. Gasparrini, Mr. Bernardone really had no legitimate reason
7  for being involved in these construction sites.

8           And I think of additional concern to the government
9  is that while Mr. Bernardone is participating in these
10 extortions he was acting as a union official.  And so, you
11 know, he's in a role in which he should really understand the
12 impact that this kind of behavior has on various folks that
13 work in these construction sites, and while he's in this
14 position he's committing these extortions.

15          Mr. Bernardone, I also want to note for the Court,
16 was doing quite financially well while he was in this union
17 position and so there really is no financial reason, not that
18 that would be an excuse, but there really was no financial
19 reason for Mr. Bernardone to be taking a piece of the action,
20 so to speak, from these construction sites.

21          I think an additional concern that the government
22 has is that Mr. Bernardone does clearly have strong organized
23 crime ties and that he, as he demonstrated while on pretrial
24 release, he did attend a funeral at which there were other
25 members and associates of organized crime.

1     So I think that there is a real need for deterrence
2 here, both specifically and generally, with respect to the
3 crime that Mr. Bernardone committed.  And for those reasons,
4 the government is asking for a sentence within the guidelines
5 range.
6     THE COURT:  Yes, sir.
7     MR. DIGIANSANTE:  Your Honor, with regard to the
8 offense conduct in this case, essentially, my understanding is
9 Mr. Bernardone had introduced John Doe #1 to Mr. Gasparrini to
10 see if he could make any money in the construction business
11 through his trucking contacts.  During that time period -- and
12 we've had the issue come up with Mr. Manganaro, the pretrial
13 officer, and my client with some substance abuse issues and it
14 is highlighted in his report.
15     During that time period in his life, most of his
16 time was spent in the home.  He was -- bordered on being a
17 recluse and there were some issues with opioid abuse at that
18 time, and that stems from the various injuries that he had
19 while on the job sites, the metal rods that he has in his back
20 and other physical limitations.  He definitely did not take
21 his prescription medication as required.
22     The reason why I bring it up, Your Honor, is that
23 but for the introduction, Mr. Bernardone had very little to do
24 with what went on in this case in terms of any direct contact
25 with any contractors, with anyone else.

1     And based on my evaluation of the case and also
2  speaking to Mr. Bernardone, there was a $2,500 loan that he
3  had taken out from John Doe #1 and other than not repaying
4  that loan, that's the only financial windfall that he received
5  from this case.
6     Did he know other people could be earning money
7  based on this introduction he made to Mr. Marcus?  Absolutely,
8  Your Honor.  But as far as my client, money that he made from
9  this was, if you want to look at it as the non-repayment of
10 the $2,500 loan, that was the sum and substance of what he
11 made on this case.
12    And you can see one of the extortions that he was
13 actually -- racketeering acts that Mr. Gasparrini was charged
14 with, Mr. Bernardone is not even mentioned on that act.  He's
15 only charged with three as opposed to four.
16    So essentially, once the introduction was made, my
17 client was home doing other things than participating in these
18 actions.  I'm not trying to say he's not guilty of any of the
19 charges that he pled to in racketeering acts two and eight,
20 but in terms of an active involvement in the case, I think
21 it's a little bit different when it comes to Mr. Bernardone.
22    One of the other things I'd like to bring out to
23 Your Honor in terms of sentencing, you can see from the
24 letters and from my client's work history, sometime --
25 actually not sometime, June 29th of 2002, he graduated from

1  the National Labor College and really sought to pursue what
2  was his passion, which was being a union official. Local 124
3  started with I think two or three members in 2003, Your Honor.
4  Now there are over 1,100 members in the local. Because of my
5  client's actions and his own fault in this case, he is no
6  longer a part of that union, stepped back from the union as
7  soon as the plea was entered in this case.
8  　　　　And while we were standing here at the podium, Ms.
9  Kasulis handed me the restrictions from the Department of
10 Labor, that Mr. Bernardone can't be involved for 13 years
11 after his plea in any sort of labor activity, and it's
12 outlined here. I would ask Your Honor to take that into
13 consideration. Really, it was his own doing that resulted in
14 this, but that's another form of punishment that has been
15 rendered in this case.
16 　　　　Right now, he's in Saint Vincent's Hospital up in
17 Harrison attending their outpatient drug program. You can see
18 from the presentence report in 2010 he actually enrolled in a
19 program. He was in there for 28 days at Villa Veritas. And
20 significantly, it was right after the time when the offense
21 conduct in this case essentially concluded. I believe our
22 conspiracy goes up to sometime in or around 2009.
23 　　　　So you have what I had said to Your Honor, during
24 his criminal conduct in this case, much of it was performed
25 while under the influence of prescription narcotics, but

albeit abused prescription narcotics.

To outline some of the letters that are here before Your Honor, you can see various people who Mr. Bernardone has helped over the years with nothing in it for him. The Grossman family, their young son who had transformative surgery based in large part on fund-raising and other activities Mr. Bernardone helped them with because insurance wouldn't cover it because it was considered an experimental procedure.

There are other individuals, and a little ironic in that he's helped so many people with substance abuse problems in the past and he's been dealing with his own demons while he's helping other people.

So, just based on essentially his whole life, he comes here, as Ms. Kasulis said, convicted of one prior misdemeanor for driving while intoxicated. I would ask Your Honor to take all of those things into consideration when deciding on a fair sentence in this case.

THE COURT: Anything else?

MS. KASULIS: No, Your Honor.

THE COURT: Anything that you'd like to say before I sentence you, Mr. Bernardone?

THE DEFENDANT: Yes, Your Honor. I just want to apologize to the Court. I let a lot of people down. I let my members down. And that was my passion, like Mr. DiGiansante

1  said, and that broke my heart.  And I let my family down,
2  because they got to go through this.  Now I know I did
3  something wrong, which I probably didn't know then, and I
4  apologize.  I apologize greatly and I'm here to take my
5  sentence.
6          THE COURT:  Okay.  Well, thank you.
7          As I said previously, the cost for acts of extortion
8  in the construction trades and other parts of the business
9  community in New York City are passed along to the taxpayers
10 and consumers and they're part of the underground economy.
11         The taxes are not paid on income that's derived from
12 such activity.  And it costs a lot of money to do business in
13 New York and built into every contract, construction contract,
14 I believe, I assume, I've been told, is a percentage for
15 dealing with these kinds of demands.  Now, I'm not saying that
16 it's a lot, but it's something.  People are always complaining
17 about the cost of doing business in New York City, and that's
18 unfortunate.
19         Another thing about this is that I think union
20 officials have an even greater responsibility to take the high
21 road in how they behave and how they manage their
22 responsibilities representing the interests of laborers,
23 people, organized labor, the working people.  And when you let
24 them down like that, it's an argument against protecting the
25 rights of working people.  And there's not very much the

1  courts can do.  We only deal with cases that come before us.
2            But the fact is that people are injured, not just
3  the people who have to pay the cost but also the people that
4  you and other officials and labor organizations, that you and
5  the labor organizations are being relied on to provide the
6  kind of leadership that will help your members, and by
7  engaging in this type of behavior that you've pleaded guilty
8  to you're letting them down.
9            It's not just a question of the law; it's a question
10 of what's right.  And there's a lot going on in New York City
11 that isn't right, and this is one small but significant
12 element in it, and that's really unfortunate.  And anyone who
13 has had the kind of life experiences you have, sir, knows the
14 difference between right and wrong, clearly.
15           I also want to just indicate that I appreciate the
16 letters that I received from members of the defendant's family
17 and friends and colleagues, and all that is very important,
18 but the underlying key here is that you have to be responsible
19 for your acts.
20           So are you ready to be sentenced?
21           THE DEFENDANT:  Yes, Your Honor.
22           THE COURT:  I sentence you as follows:  27 months in
23 the custody of the Attorney General, three years of supervised
24 release, with the following special conditions:
25           You shall participate in an outpatient or inpatient

drug treatment or detoxification program approved by the U.S. Probation Department.  You shall contribute to the cost of such treatment, not to exceed an amount determined reasonable by the Probation Department's sliding scale for substance abuse treatment services and shall cooperate in securing any applicable third-party payment, such as insurance or Medicaid. You shall disclose all financial information and documents to the probation department to assess your ability to pay.

You shall not consume any alcohol or other intoxicants during and after treatment unless granted a prescription by a licensed physician and proof of the same is provided to the probation department.

You shall submit to testing during and after treatment to ensure abstinence from drugs and alcohol.

You shall abstain from the consumption of prescription medication classified as opiates, benzodiazepines, stimulants, depressants, sedatives or hypnotics unless the prescribing physician is fully aware of your substance abuse history.

You shall immediately notify the probation officer prior to filling any of the above listed prescription medications and permit the probation officer to contact any healthcare professional who prescribes any medication to you.

You shall not purchase any medication via the Internet unless such medication is prescribed by a healthcare

professional who conducts an examination of you in person.

You shall participate in a mental health treatment program as approved by the probation department.  You shall contribute to the cost of such services rendered and any psychotropic medications prescribed to the degree you are reasonably able and shall cooperate in obtaining any applicable third-party payment.  You shall disclose all financial information and documents to the probation department to assess your ability to pay.

You shall not possess a firearm, ammunition or destructive device.

You shall not associate in person, through mail, telephone, or electronic communication with any individual with an affiliation to any organized crime groups, gangs or other criminal enterprise pursuant but not limited to a prohibition list provided by the U.S. Probation Department, nor shall you frequent any establishment or other locale identified by the U.S. Probation Department as a location where these persons or groups may meet.

I am imposing a $100 special assessment, which is mandatory.

I'm not imposing a fine as it does not appear that you are able to pay a fine.

You have the right to appeal your sentence to the U.S. Court of Appeals for the Second Circuit if you believe

1   the Court has not properly followed the law in sentencing you.

2   Your time to appeal is extremely limited and, therefore, you

3   should discuss with your attorney at once whether an appeal

4   would be worthwhile.

5         I note that in your plea agreement, you agree not to

6   appeal or otherwise challenge the sentence that I imposed,

7   that is 27 months or below.  Consequently, you have a contract

8   with the government having to do with your right to appeal.

9         I believe it's 30 months, correct?

10        MS. HECTOR:  Yes.

11        MS. KASULIS:  Yes, Your Honor.

12        THE COURT:  So that may further limit your ability

13  to appeal.  You should discuss with your attorney immediately

14  whether you wish to appeal.  Do you understand that?

15        THE DEFENDANT:  Yes, Your Honor.

16        THE COURT:  There are open counts?

17        MS. KASULIS:  Yes, Your Honor.  The government moves

18  to dismiss any open counts against Mr. Bernardone.

19        THE COURT:  All open counts are dismissed on motion

20  of the government.  Surrender?

21        MR. DIGIANSANTE:  Your Honor, I would just also ask

22  as a part of any recommendation that Mr. Bernardone be

23  recommended to the RDAP program, based on his substance abuse

24  history.  And also, I have checked into which facilities in

25  the area offer the RDAP program and I know that FCI Danbury

1  and also Fort Dix offer the RDAP program.
2           THE COURT:  Is there any objection?
3           MS. KASULIS:  No, Your Honor.
4           THE COURT:  I'm going to recommend that the
5  defendant be admitted to the RDAP program, although I cannot
6  require it, and that he be designated to a facility in the New
7  York metropolitan area, preferably the facility at Danbury or
8  at Fort Dix where they have such a program.  Whether he gets
9  into the program, I don't know.
10          MR. DIGIANSANTE:  I understand.
11          THE COURT:  But also, it would be helpful for him to
12 be near his family.
13          MS. KASULIS:  Your Honor, two additional points.
14 The first is I do want to note for the record that Mr.
15 Bernardone did pay $10,000 in forfeiture as per the terms of
16 his plea agreement.
17          THE COURT:  So there's no longer a need to put that
18 in a judgment.
19          MS. KASULIS:  Correct.  And secondly, as Mr.
20 DiGiansante noted, the Department of Labor has served a notice
21 on Mr. Bernardone barring him from official union positions,
22 per the Labor Management Reporting and Disclosure Act.  As
23 with Mr. Scalza, would you like the government to submit an
24 order memorializing that ban, pursuant to the Act?
25          THE COURT:  Sure.  That would be useful.

1                MS. KASULIS:  Thank you, Your Honor.

2                THE COURT:  I'm going to set a surrender date.  Is

3    that agreeable to the government?

4                MS. KASULIS:  Absolutely.

5                THE COURT:  Of October 16th, 2014 at 12 noon, no

6    later than 12 noon, at the U.S. Marshal's Office on the ground

7    floor of this building.  If the defendant is designated to a

8    Bureau of Prisons facility prior to that time, received a

9    notice thereof, he should simply surrender to the facility.

10   If he hasn't received a notice by that time, I'll extend the

11   surrender date, on motion of the defense.

12               Anything else?

13               MS. KASULIS:  No, Your Honor.

14               THE COURT:  Have a nice day.

15               MS. KASULIS:  Thank you.  You, too.

16               MS. HECTOR:  Thank you.

17               MR. DIGIANSANTE:  Thank you.

18               (Whereupon, the proceedings were concluded at 2:06

19   p.m.)

1  I certify that the foregoing is a correct
2  transcript from the record of proceedings in the
3  above-entitled matter.
4
5  /s/   Sherry Bryant
   _____
   Sherry Bryant, RMR, CRR
6  Official Court Reporter